IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEIKO BUCHANAN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>STEVEN BOWMAN, ANTHONY WILLS, PERCY MYERS, ALISA DEARMOND, and KILIAN CRANE,<br><br>　　　　　　　Defendants. | Case No. 23-cv-512-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Meiko Buchanan, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Pinckneyville Correctional Center and Menard. This matter is currently before the Court on Buchanan's motion for preliminary injunction (Doc. 4), which seeks medical care in the form of an examination by an independent audiologist. On June 27, 2023, the Court held an evidentiary hearing on the motion.

## BACKGROUND

On February 16, 2023, Buchanan filed his Complaint alleging deliberate indifference in treating pain in his left ear. Buchanan alleged that he suffered from left ear pain from January 10, 2022, until April 6, 2022, with no relief (Doc. 8, p. 2). On April 6, 2022, after transferring to Menard, he was finally seen by medical staff and had his left

ear flushed. As a result of the flush, a small object was removed from his ear (*Id.*). Despite continuing to complain of pain, swelling, and hearing loss, Defendants denied him a medical service referral (*Id.*). Buchanan's Complaint alleged various constitutional violations based on the failure to initially treat his pain and the continued refusal to send him for outside care. After the Court conducted a review of the Complaint pursuant to 28 U.S.C. § 1915A, Buchanan was allowed to proceed on the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Myers for failing to properly treat Buchanan's ear pain and allowing him to be transferred to Menard without treatment.
>
> Count 2: Eighth Amendment deliberate indifference claim against Dearmond and Crane for refusing to refer Buchanan for outside care of his left ear pain and hearing loss despite Menard lacking an onsite treating physician.
>
> Count 3: Eighth Amendment deliberate indifference claim against Bowman (individual capacity only) for failing to hire an onsite medical doctor at Menard, delaying medical treatment through the collegial review process, failing to adequately hire and train staff, and failing to keep medical records requests.

(Doc. 8).

To the extent Buchanan sought injunctive relief in the form of an outside referral to a specialist, the Court added Warden Anthony Wills (in his official capacity only) for the purpose of implementing any injunctive relief awarded (*Id.* at p. 5).

Along with his Complaint, Buchanan filed a motion for preliminary injunction (Doc. 4). In his motion, Buchanan alleged that he continued to suffer from pain from the injury to his left ear and that he had documented hearing loss (*Id.* at p. 4). Despite the documented issues with his hearing, Buchanan alleged that Defendants continued to

refuse him access to outside care.

Defendants Myers, Dearmond, and Crane filed a response to Buchanan's motion (Doc. 38). They also submitted Buchanan's medical records, documenting the care he received while at Pinckneyville and currently at Menard.

### A. Medical Care at Pinckneyville

Buchanan first presented to the healthcare unit at Pinckneyville with left ear pain on January 22, 2022 (Doc. 39-1, pp. 3, 11). He also complained of hearing loss (*Id.*). Due to COVID-19 restrictions in place at the time, the nurse was unable to visualize Buchanan's ear. She prescribed him Tylenol and Debrox drops (*Id.*). He was advised to return if the issues persisted or worsened (*Id.* at pp. 4, 11). On January 28, 2022, Buchanan presented to Dr. Myers for continued left ear pain. He informed Dr. Myers that it felt like something was in his ear (*Id.* at pp. 4, 12). Dr. Myers probed the ear, but the ear canal appeared normal—there was no inflammation or evidence of hearing loss (*Id.*). Dr. Myers testified in his affidavit that he used an otoscope to visualize and assess the canal, tympanic membrane, and middle ear (*Id.* at p. 4). Finding nothing, Dr. Myers diagnosed Buchanan with mild otitis—a mild ear infection—and prescribed Maxitrol drops and Tylenol (*Id.*). Maxitrol is a combination of two antibiotics used to treat mild ear infections (*Id.* at p. 5).

After prescribing Maxitrol, Dr. Myers testified that Buchanan became argumentative. He complained that Maxitrol would be ineffective despite Dr. Myers's insistence that Maxitrol was a completely different medication from the Debrox drops Buchanan was currently using (*Id.* at p. 5).

On February 1, 2022, Buchanan again presented to the nurse sick call line, this time

complaining of *right* ear pain (*Id*. at pp. 5, 13). He also informed the nurse that he put water and his fingers in his ear, despite instructions on both previous visits to not put anything in his ear (*Id*.). Although Buchanan complained that the medication was not effective, Dr. Myers testified that it had only been four days, and it would take several days to take effect (*Id*. at pp. 5-6). Buchanan continued to complain of ear pain. On February 12, 2022, he again complained of *right* ear pain at nurse sick call (*Id*. at p. 15). Four days later, he complained of *left* ear pain, noting that if felt like there was a foreign object in his ear (*Id*. at pp. 6, 16). Dr. Myers saw Buchanan on February 18, 2022, examined his ear, and again diagnosed Buchanan with otitis. Buchanan again argued about being prescribed Maxitrol, so Dr. Myers prescribed oral antibiotics instead (*Id*. at pp. 6-7, 17). Buchanan maintains that he made at least 17 complaints regarding ear pain between January 21, 2022, and March 3, 2022, while he was at Pinckneyville (Doc. 56, pp. 3-4).

### B.  Medical Care at Menard

On March 10, 2022, Buchanan transferred to Menard (Doc. 39-1, p. 7). There are no reports of ear pain on the intake form (Doc. 39-2, p. 16), but Buchanan maintains that he did report his ear pain (Doc. 56, p. 20). On March 31, 2022, Buchanan presented to nurse sick call with complaints of left ear pain (Doc. 39-2, p. 3, 17). He did not report any drainage, denied putting anything in his ear, and denied a history of earaches or infections (*Id*.). He did report being prescribed antibiotics, ear drops, and pain medications for the previous two months (*Id*.). His ear cavities appeared normal, and no perforations were visualized (*Id*.).

Although scheduled for an appointment with Nurse Practitioner ("NP") Crane on

April 1, 2022, Buchanan never showed up for the call line, despite multiple calls from security (*Id*. at p. 4, 18). NP Crane was informed by security that Buchanan went to the yard (*Id*.). Buchanan maintains that he was never notified of the appointment and the guards never came to get him for the appointment (Doc. 56, pp. 6, 20). On April 6, 2022, Buchanan did present at nurse sick call to have his ear flushed. A small, dark blockage was removed from the canal (Doc. 39-2 at pp. 4, 19). Although Buchanan maintains that the object was a bug, the medical records only indicate that the object was a "small dark blockage" (*Id*. at p. 19).

Despite the removal of the object, Buchanan continued to complain of ear pain. On April 18, 2022, he reported to nurse sick call with ear pain and reported flushing his ear with cable cord and water (*Id*. at pp. 4, 20). Despite the ear appearing normal with no signs of redness or swelling, he was instructed not to put anything in his ear and referred to a nurse practitioner. On April 20, 2022, Buchanan saw NP Crane for his ear pain (*Id*. at pp. 5, 21). Crane used an otoscope to visualize his ear; it appeared normal (*Id*. at p. 5). She noted a slight bulge in his tympanic membrane, but it was within normal limits (*Id*. at pp. 5, 21). Crane ordered a hearing test and prescribed Tylenol, Debrox drops, and Claritin (*Id*.).

On May 4, 2022, Buchanan received a hearing test. He reported sudden loss of hearing in his left ear (*Id*. at p. 23). At the time of the test, there were no deformities in the ear, nor was there redness, swelling, or any drainage (*Id*.). His left ear had noted hearing issues; he was referred for further care (*Id*. at p. 22-24).

After the test, NP Dearmond referred Buchanan to an audiologist for a hearing

evaluation. The evaluation was subsequently approved and submitted for scheduling (*Id.* at pp. 25-28; Doc. 39-3, pp. 6-7). NP Dearmond did not see Buchanan on this date; she simply submitted the referral (Doc. 39-3, p. 6). She testified in her affidavit that she never personally examined or treated Buchanan, and she was not personally involved in his care or treatment (*Id.* at p. 10). NP Dearmond simply submitted the referral for the audiology examination on May 9, 2022 (*Id.*). She testified this was standard protocol after he failed his hearing test on May 4, 2022 (*Id.*). The actual scheduling of the audiologist was outside of her control; scheduling was controlled by the specialist and his schedule (*Id.* at p. 11).

On September 26, 2022, Buchanan reported to nurse sick call for ear pain (Doc. 39-2, pp. 7, 30). He informed the nurse he put warm water in his ear. The nurse did observe some swelling and redness but no perforations. He was prescribed Amoxil and Floxin ear drops (*Id.*). On October 28, 2022, he again complained of left ear pain (*Id.* at pp. 7-8, 32). He noted he had greenish, brown discharge and informed the nurse that he used tubes to shoot water into his ear. The nurse again educated him on not putting anything in his ear (*Id.*).

On November 11, 2022, Buchanan met with Dr. Glen Babich by telemedicine (*Id.* at pp. 8, 33). Buchanan reported decreased hearing in his left ear, a tympanic membrane bulge, and wax buildup (*Id.*). Dr. Babich could not visualize the ear but diagnosed him with ear wax. Dr. Babich ordered an onsite provider to examine Buchanan's left ear and a follow-up appointment for an audiogram and audiology exam (*Id.* at pp. 8, 33). Although Buchanan was scheduled for another audiology exam on December 21, 2022,

he refused the appointment (*Id.* at p. 35). Notes in his medical records indicate that Buchanan would be rescheduled with the audiologist when the audiologist was back on-site (*Id.* at pp. 9, 36-37, 39). Buchanan testified in an affidavit that he did not know the appointment was with an audiologist and he, instead, took a phone call with his lawyer Doc. 56, p. 21). Buchanan thought it was just a hearing test, as he had been told he was going to an outside audiologist (*Id.*).

On March 14, 2023, Buchanan again complained to NP Crane about ear pain (Doc. 39-2, pp. 9, 42-43). He told Crane that his ear issues had been ongoing for 14-15 months with no improvement (*Id.*). Crane noted that Buchanan did sign a refusal for his previously audiology appointment but informed her that he had a legal call that day (*Id.*).[1] His right ear appeared normal and his left ear tympanic membrane was creamy in color, but there no drainage was noted. NP Crane diagnosed Buchanan with acute otitis media. Buchanan was prescribed Augmentin, Ciprodex ear drops, and Tylenol (*Id.*).

C. **Crane Affidavit**

Crane testified that she only saw Buchanan on two occasions, April 20, 2022, and March 14, 2023 (Doc. 39-2, p. 10). She testified that Buchanan had another appointment scheduled with her on April 1, 2022, which he skipped to go to the yard (*Id.*). Crane testified that his actions led her to believe that his condition was not an emergency. She also noted that Buchanan went long periods of time without reporting hearing loss or

---

[1] The medical records from December 27, 2022, indicate that Buchanan refused the appointment, but there was no refusal form signed by Buchanan (Doc. 39-2, p. 39). At the evidentiary hearing, Defendants produced the signed refusal form (Doc. 60-2).

complaints of pain, which also led her to believe that his condition was not as serious as he initially reported (*Id*. at pp. 11-12). He also refused his subsequent audiogram in December 2022 and did not report any further issues until March 2023 (*Id*.). His lack of complaints and refusal of the audiology exam led Crane to conclude, in her medical opinion, that his complaints were transitory and not chronic (*Id*. at p. 12).

Crane testified that although he did report hearing difficulties and pain on numerous occasions, when she saw him on April 20, 2022, his physical examination was normal, and there was no clear physiological evidence for the cause of his pain (*Id*. at p. 10). She prescribed Debrox for earwax and Claritin (*Id*.). She based this decision on his prior history of drainage, blockage, and lack of signs of infection. She also believed the issues, which she described as transitory, to be caused by inflammation from allergies or a bacterial infection that subsided when prescribed the proper medication (*Id*.). On March 14, 2023, she diagnosed him with acute otitis media, which she testified is an infection of the middle ear caused by allergies or respiratory infection (*Id*. at pp. 12-13). She testified that his symptoms then were clear symptoms of acute otitis media, including ear pain, redness of the ear canal, and creamy tympanic membrane (*Id*.). She believed that his prior complaints were incidents of transient otitis media with effusion—an inflammatory response to acute otitis media or eustachian tube dysfunction (*Id*. at p. 13). Crane believed his prior incidents were otitis media with effusion due to the lack of acute inflammation (*Id*. at p. 13). Those conditions are properly treated by observation and re-examination every six months (*Id*.). She believed that given the nature of his condition in March 2023, she properly diagnosed him at that time with acute otitis media and that there was no

clinical need for a referral to a specialist such as an otolaryngologist (ENT).

### D. Evidentiary Hearing

On June 27, 2023, the Court held an evidentiary hearing and heard testimony from Buchanan. Buchanan testified that he still has pain in his left ear. He was scheduled for an appointment with a nurse on June 25, 2023, but the appointment did not occur. Although Buchanan testified that he had not seen medical personnel in three weeks because of a lockdown, he later admitted that he saw Dr. Glenn Babich the day before the hearing, June 26, 2023. He was previously prescribed Ibuprofen for his pain.

Buchanan acknowledged that he was referred in May 2022 for a follow-up with an audiologist after failing his hearing test. He believed that he would leave the prison to see an outside audiologist. He testified that he had no further update on when he would see an audiologist. He recently spoke with the ADA coordinator and inquired about scheduling an appointment when the coordinator dropped off a hearing aid to his cellmate. The ADA coordinator had no updates on an appointment because she does not schedule appointments.

Buchanan testified that he had not seen a doctor since transferring to Menard from Pinckneyville. He only saw the nurses or nurse practitioners because there is no doctor assigned to Menard. He later admitted that he saw Dr. Babich and was referred to the healthcare unit for a provider to examine his ear.

Buchanan also admitted that he refused his appointment with the audiologist on December 21, 2022, but he testified that he did not know he was scheduled with an audiologist. He believed the referral to an audiologist was for an appointment outside of

the prison, and he only knew that he was scheduled for a sick call for December 21. He believed that the sick call was with another nurse, so he decided to use the time to call his lawyer.

On cross-examination, Buchanan admitted that he saw an audiologist on January 26, 2023. Buchanan testified that he did not know the individual was a doctor and did not realize he was an audiologist because he had been told previously that the appointment would be with an outside audiologist. Defendants introduced the audiologist's report into the record (Doc. 60-1).

On January 26, 2023, an audiologist, David Taylor, examined Buchanan. Examination of the ear revealed "clear, unremarkable ear canals and tympanic membranes bilaterally" (Doc. 60-1, p. 6). Taylor noted that the audiometric testing revealed functional hearing loss but found that there was poor test reliability given mixed results. He noted that the "crossover [was] not present where it would be expected." (*Id.*). Taylor noted that the results suggested a possible "malingering component," and he recommended a re-test at a later date, with the test scheduled in six months to a year (*Id.* at p. 3). Defendants also produced the signed refusal for Buchanan's December 21, 2022 audiologist appointment, clearing up the discrepancy in the medical records (Doc. 60-2).

## LEGAL STANDARDS

### A. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay

Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and

unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his

complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

## ANALYSIS

Simply put, Buchanan fails to demonstrate that he is entitled to injunctive relief at this stage. Specifically, Buchanan fails to demonstrate a likelihood of success on the merits of his claims. Despite claiming that he is not receiving proper care, the medical records reflect that Buchanan is receiving care for his hearing issues and associated pain. Although he initially testified at the evidentiary hearing that he had not seen a medical provider in three weeks and had not seen a doctor since transferring from Pinckneyville, he later admitted that he saw Dr. Glenn Babich just one day before the hearing. The medical records also demonstrate that he saw Dr. Babich on November 11, 2022 (Doc. 39-2, p. 33) and nurse practitioner Crane on March 14, 2023. He has been prescribed medications on numerous occasions for his ear pain.

In addition to receiving medical care while at Menard, he has also seen an audiologist. Although Buchanan testified that he had not seen an audiologist since refusing his appointment in December 2022, as discussed above, Defendants produced medical records at the evidentiary hearing which showed that Buchanan saw audiologist David Taylor on January 26, 2023 (Doc. 60-1). Taylor examined Buchanan's ears and found clear and unremarkable ear canals and tympanic membranes (*Id*. at p. 3). Although the tests showed functional hearing loss, Taylor found the tests were in poor agreement and unreliable. He also indicated that the results suggested that Buchanan was "malingering" (*Id*. at p. 4). In other words, Taylor felt that Buchanan was faking or

exaggerating his symptoms.

Buchanan's motion for preliminary injunction specifically sought examination by an independent audiologist (Doc. 4, p. 5), and it is clear from the medical records that Buchanan has received the care that he requested. Thus, the Court finds no evidence of deliberate indifference at this time. Buchanan is clearly receiving care.

Further, the audiologist's notes indicate that he believed Buchanan to be malingering his condition and found no evidence or source of the pain Buchanan testified about. The Court also finds that Buchanan's testimony regarding his condition was unreliable. He initially testified that he had not seen any medical personnel in the last three weeks, but later admitted that he saw Dr. Babich the day before the hearing. He also stated that he had not been seen by the audiologist. But the medical records showed that he actually attended an exam with the audiologist in January 2023. Further, Buchanan testified that he did not know he was scheduled for an appointment with an audiologist in December 2022 and only refused to go to the appointment because he thought the appointment was with a nurse. But Buchanan's signed refusal demonstrates he was fully aware that the appointment was with an audiologist and chose not to attend (Doc. 60-2). His testimony was contradicted on numerous occasions, and the Court does not find his testimony about his current condition or lack of care to be credible. It is clear that Buchanan is receiving care, including his requested referral to an audiologist. The medical records make clear that Buchanan will be retested in six months to a year, and he continues to be seen by providers for his complaints of ear pain. Thus, the Court finds that injunctive relief is not warranted at this time.

CONCLUSION

For the reasons stated above, Buchanan's motion for preliminary injunction is DENIED (Doc. 4).

**IT IS SO ORDERED.**

**DATED:   June 28, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**